**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0030n.06
Filed: January 12, 2005

**No. 03-3562**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| JEROME CROSS, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER, MOORE, and COLE, Circuit Judges.

**SILER, Circuit Judge.** Defendant Jerome Cross appeals his sentences based on drug trafficking and firearm convictions, claiming that the jury's findings were not supported by sufficient evidence and the district court erred in its application of the United States Sentencing Guidelines. We **AFFIRM**.

**BACKGROUND**

From 1999 through 2002, a drug trafficking conspiracy was headquartered in the Columbus, Ohio home of Derrick Billups. Billups's supplier, Cross, would bring the drugs from Michigan to Columbus and often would "cook" the cocaine into crack for resale and/or delivery to lower-level drug traffickers to distribute. In late 2000, Billups moved the conspiracy's headquarters to a different home in Columbus.[1] Billups kept a gun in his home to be used by fellow drug traffickers

---

[1]Like Billups's first home, this was a "stash" house used to store drugs.

staying there if needed to "protect the drugs" in case of robbery. In April 2002, federal officers executed a search warrant at Billups's home, whereupon they discovered cocaine, crack, and items used to manufacture crack. Cross, the only person at home at the time of the raid, crawled out of a bedroom. In that bedroom was Cross's cellular telephone, $5,000 in cash, and a loaded .45-caliber pistol. When the officers searched Cross, they discovered $2,300 in cash, including two pre-recorded $100 bills that a confidential informant had used for a crack purchase two days earlier.

Cross was later convicted of conspiracy to possess with intent to distribute in excess of fifty grams of cocaine base, or crack, and in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and (iii), and 846; possession with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(A)(ii), and 18 U.S.C. § 2; possession with intent to distribute in excess of five grams of cocaine base, or crack, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), and 18 U.S.C. § 2; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). His base offense level was increased by four levels after the district court found he had an aggravating role in the conspiracy as an organizer or leader. *See* USSG § 3B1.1. He was sentenced to 360-months' imprisonment on the first three counts and 60-months' imprisonment on the fourth count, for a total of 420-months' imprisonment.

## DISCUSSION

Cross first argues that his convictions for conspiracy, drug trafficking, and possession of a firearm in furtherance of a drug trafficking crime were not supported by sufficient evidence. In reviewing Cross's "challenges to the sufficiency of the evidence supporting [his] criminal convictions, we must ask 'whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (citations omitted).

The evidence was more than sufficient to justify each conviction. First, Cross brought multiple kilograms of cocaine to Columbus on several occasions, "cooked" the cocaine into crack with Billups, and distributed the cocaine to lower-level drug traffickers to sell. Although these lower-level traffickers were allowed to keep a portion of the drug proceeds, the rest of the money went to Billups, and Billups's supplier was Cross. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a conspiracy beyond a reasonable doubt. *See United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999). Second, to violate 21 U.S.C. § 841(a)(1), the government must demonstrate that Cross "(1) knowing[ly] (2) possess[ed] . . . a controlled substance (3) with intent to distribute." *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001) (quoting *United States v. Christian*, 786 F.2d 203, 210 (6th Cir. 1986) (citation omitted)). Here, there was sufficient evidence to find that Cross possessed cocaine and crack with intent to distribute. When the house was raided, Cross, who used the house to "cook" cocaine into crack, was the only person at home. The search of the house yielded large quantities of drugs and his fingerprints were discovered on (1) an industrial press used to manufacture crack, (2) a jar of "cut," and (3) a box of latex gloves. *See United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991). Moreover, Cross's intent to distribute was properly inferred from the large quantities of cocaine and crack in his possession. *See United States v. Welch*, 97 F.3d 142, 149 (6th Cir. 1996). Third, the firearm was moved around inside the house, from place to place, and the drug traffickers would inform their cohorts of its location in case it was needed. Because the gun was loaded and was moved around the house so as to be strategically located for quick access, drugs were

manufactured and stored in the house, and $5,000 in cash was found in the same bedroom as Cross, there was also sufficient evidence to support this conviction. *See Mackey*, 265 F.3d at 462-63.

Cross next argues that the district court plainly erred in instructing the jury as to the parties' stipulations and the definition of reasonable doubt. Cross bears a heavy burden in demonstrating that the district court's jury instructions, to which he failed to object, constituted plain error. *See United States v. Jones*, 108 F.3d 668, 670 (6th Cir. 1997) (*en banc*). To establish plain error under Fed. R. Crim. P. 52(b), we must complete four analyses: (1) did an error occur; (2) if so, was the error plain; (3) if plain, did the error affect substantial rights; and (4) whether this plain error "affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation omitted).

There was no plain error regarding either instruction. Here, the parties stipulated to the quantity, i.e., weight, of cocaine and crack seized. Although the district court instructed the jury that the parties had stipulated to the quantity of drugs, it further instructed that the government must prove that quantity Cross intended to distribute beyond a reasonable doubt. *Cf. Jones*, 108 F.3d at 671. Furthermore, there was no effect on Cross's substantial rights or the outcome of the trial, since the error was not prejudicial. *See id.* at 672 ("nearly impossible" to establish that erroneous instruction affected trial's outcome since defendant made stipulation).

Additionally, the district court provided a thorough definition of "reasonable doubt" to the jury. While the instruction's use of "moral certainty" may be "ambiguous in the abstract, the rest of the instruction given in [Cross's] case lends content to the phrase." *Victor v. Nebraska*, 511 U.S. 1, 14 (1994). This instruction accurately recited the government's burden of proof. Like *Victor*, the

district court here prefaced its "moral certainty" language with the same "an abiding conviction" language. *See id.* at 7, 21; *Workman v. Bell*, 178 F.3d 759, 776-77 (6th Cir. 1998).

Cross lastly argues that the district court clearly erred by increasing his base offense level. Pursuant to USSG § 3B1.1(a), the district court found that Cross was an organizer or leader of a conspiracy which involved five or more participants and increased his base offense level by four levels. We will not disturb the district court's decision to enhance Cross's base offense level due to his leadership in the conspiracy unless such finding was clearly erroneous. *See United States v. Finkley*, 324 F.3d 401, 403 (6th Cir. 2003).

This argument too fails, as the government proved the applicability of USSG § 3B1.1 by a preponderance of the evidence. Cross was *the* supplier to the conspiracy and "cooked" the cocaine into crack. *See id.*, application note 4 (consider defendant's "nature of participation in the commission of the offense"); *United States v. Owusu*, 199 F.3d 329, 346-47 (6th Cir. 2000). Cross also kept a larger share of the drug proceeds than his co-conspirators, as evidenced by his expensive jewelry, luxury automobiles, and the large amount of cash he had when arrested, especially in light of the fact that he was unemployed. *See* USSG § 3B1.1, application note 4 (defendant "claimed right to a larger share of the fruits of the crime"). While Cross further argues that *Blakely v. Washington*, — U.S. —, 124 S. Ct. 2531 (2004), mandates that his upward enhancement is unconstitutional, we recently held that *Blakely* does not invalidate the Sentencing Guidelines. *See United States v. Koch*, 383 F.3d 436 (6th Cir. Aug. 13, 2004) (*en banc*).

**AFFIRMED.**

Judge MOORE concurs in the judgment only.