**UNITED STATES of America,**
**Plaintiff,**

v.

**Lawrence KELLEY, Jr., Defendant.**

**No. 8:04CR211.**

United States District Court,
D. Nebraska.

Feb. 1, 2005.

Michael J. Hansen, Federal Public Defender's Office, Lincoln, NE, for Defendant.

Robert F. Kokrda, Assistant United States Attorney, Frederick D. Franklin, Assistant United States Attorney, Omaha, NE, for Plaintiff.

## MEMORANDUM OPINION

BATAILLON, District Judge.

This matter is before the court for sentencing. This sentencing hearing was continued in anticipation of the Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

## I. BACKGROUND

In *Booker*, the Supreme Court found that its holdings in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), apply to the United States Sentencing Guidelines ("Guidelines"). *Booker*, —— U.S. at ——, 125 S.Ct. at 756 (Stevens, J., opinion of the Court) (hereinafter, "substantive majority opinion"). Thus, the Sixth Amendment will be violated by the imposition of an enhanced sentence under the Guidelines based on a sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant. *Id.* The *Booker* decision "reaffirms the holding in *Apprendi:* Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.*

Having found that the Sixth Amendment precludes the enhancement of a sentence based on a court's finding of a sentence-enhancing fact, the Supreme Court, in a separate opinion, next considered the question of whether, "the Sentencing Guidelines as a whole would be inapplicable ... such that the sentencing court must exercise its discretion to sentence the defendant within the maximum and minimum set by statute for the offense of conviction." *Id.* at 756–57 (Breyer, J., opinion of the Court) (hereinafter, "remedial majority opinion"). The Court answered the remedial question by severing and excising the provision of the federal sentencing statute that makes the Guidelines mandatory, thus rendering the Guidelines effectively advisory. *Id.* at 757. The Court also excised the provision setting

forth appellate standards of review, 18 U.S.C. § 3742, holding that sentences should be reviewed under the standard of "reasonableness," determined with reference to the standards set forth in 18 U.S.C. § 3553(a), which "sets forth numerous factors that guide sentencing." *Id.* at 757, 765–66. Post-*Booker*, the Sentencing Reform Act (SRA) requires a sentencing court to regard the Guidelines ranges as one of many factors to consider in determining the sentence.[1] *Id.* at 766 (remedial majority opinion); 18 U.S.C. § 3553(a). Accordingly, this court is not bound by the Guidelines but must "consult" them and "take them into account when sentencing." *Id.* at 767 (remedial majority opinion); *see also id.* at 790 (Scalia, J., dissenting in part) (noting that "district courts have discretion to sentence anywhere within the ranges authorized by statute—much as they were generally able to do before the Guidelines came into being.").[2]

Significantly, the Supreme Court neither held, nor implied, that the measure of reasonableness is the Guideline sentencing range.[3] Indeed, this court is mindful that "any system which [holds] it *per se* unreasonable (and hence reversible) for a sen-

tencing judge to reject the Guidelines is indistinguishable from the mandatory system" that the Supreme Court found unconstitutional. *Id.* at 794 (Scalia, J., dissenting). This court's determination of reasonableness in the first instance, then, will be guided by the statutory factors set out in 18 U.S.C. § 3553(a), together with consideration of the now-advisory Guidelines. *See id.* at 766–767 (remedial majority opinion).

■ Although the advisory Guidelines system does not arouse Sixth Amendment concerns to the extent that a mandatory Guidelines system does, *see id.* at 750 (substantive majority opinion) (stating "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant"), this is not to say that there are no longer any constitutional constraints on sentencing under *Booker*, even as applied to the now-advisory Guidelines system. *See, e.g., McMillan*, 477 U.S. 79, 87, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (due process will be violated when the finding of a sentencing factor becomes "a tail which wags the dog of the substantive offense"),

1. The district court remains charged under the SRA with the duty to "impose a sentence sufficient, but not greater than necessary," to comply with sentencing purposes and to "consider the nature and circumstances of the offense and the history and characteristics of the defendant" in so doing. *See* 18 U.S.C. § 3553(a)(1). The court must further consider "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *See* 18 U.S.C. § 3553(a)(2). In addition, the court must consider, as advisory, the kinds of sentence available and the applicable category of

offenses and category of defendant as set forth in the Guidelines, and its policy statements, as well as the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(3)-(6).

2. As discussed later in this opinion, a district judge's discretion is more constrained post-*Booker* than it was under the pre-Guidelines system.

3. Interestingly, the court also avoided couching its holding in terms of the "statutory maximum," referring instead to "maximum authorized by the facts," *Booker*, —— U.S. at ——–——, 125 S.Ct. at 752–53 (substantive majority opinion) (commenting that "[m]ore important than the language used in our holding in *Apprendi* are the principles we sought to vindicate").

*see also Booker*, —— U.S. at —— n. 6, 125 S.Ct. at 798 n. 6 (Thomas, J., dissenting in part) (stating that the Court's holding in *Booker* corrects the Sentencing Commission's mistaken belief, set out in U.S.S.G. § 6A1.3, p.s., that the preponderance of evidence standard is appropriate to meet due process requirements—"[t]he Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by a jury or admitted by defendant."). The Due Process Clause is implicated whenever a judge determines a fact by a standard lower than "beyond a reasonable doubt" if that factual finding would increase the punishment above the lawful sentence that could have been imposed absent that fact. *Id.* at 754–55; *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348. *Booker* does not alter these due process constraints on sentencing.[4] *See Blakely*, 124 S.Ct. at 2539–40.

■■■ Thus, the contention that *Booker* signals a return to pre-Guidelines discretion is an overstatement. In contrast to the unfettered and unreviewable discretion to sentence a defendant at any point within a broad statutory range that existed prior to the Guidelines, a sentencing court's discretion is now constrained by the notion of "reasonableness." *See Booker*, —— U.S. at —— – ——, 125 S.Ct. at 765–66. Because a district court's determination can be re-

viewed for reasonableness, and can accordingly be reversed if found unreasonable, the upper limit of a lawful sentence is no longer the "maximum term of imprisonment" under a statute that sets out a generally broad range (i.e., the "statutory maximum"), but the highest point within that range that is "reasonable." *See id.* at 748–49, 754–56 (substantive majority opinion) (referring to upper limit as "maximum authorized by facts established" by guilty plea or jury verdict and stating that constitutional safeguards do not concern the ability of the legislature to define criminal conduct but involve only the required procedures for finding the facts that determine the maximum permissible punishment), 765 (remedial majority opinion) (outlining standard of appellate review), 797 (Thomas, J., dissenting) (referring to upper limit as "lawfully imposed sentence"). It cannot be seriously disputed, for example, that it would be unreasonable to impose the imposition of the maximum sentence of twenty years on a first-time offender for distribution of a small amount of a controlled substance.[5]

■■■ The fact that this court's discretion is cabined, post-*Booker*, by the requirement of reasonableness means that the court cannot sentence a defendant above a reasonable point within a sentencing range without affording procedural protections under the Fifth and Sixth Amendments. *See id.* at 752 (substantive majority opinion) (referring to facts that enhance sen-

---

4. Although the precise contours of those constraints remain to be determined, this court must nonetheless attempt to reconcile the inherent discord between *Booker's* substantive majority opinion, which finds a constitutional violation, and a remedy crafted by judges who, for the most part, disagree with the essential substantive finding. *Compare Booker*, —— U.S. at —— – ——, 125 S.Ct. at 752–56 (substantive majority opinion) *with id.* at 757–69 (remedial majority opinion), *and id.* at 771–789 (Breyer, J. dissenting in part); *see also Blakely*, —— U.S. at ——, 124 S.Ct. at

2551 (Breyer, J., dissenting). If not properly construed, *Booker's* remedial scheme risks thwarting the purposes of its substantive majority holding.

5. Nor, for that matter, in the present case, can it be seriously disputed that it would be unreasonable to impose the statutory maximum term of twenty years of imprisonment for scanning and printing a twenty-dollar bill on a home computer and cashing it for food at a Kwik Shop.

tencing ranges and the need to preserve Sixth Amendment substance); *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348 (stating that the relevant inquiry is not one of form but of effect—"does the requisite finding expose the defendant to greater punishment?"); *see also id.* at 499–502, 120 S.Ct. 2348 (Thomas, J., concurring) (stating that the impact of a certain fact on a sentence is of consequence to the Constitutional analysis). It is this court's task, then, to determine that reasonable point.

In making that determination, *Booker* instructs that the court "consult" and "take into account" the Sentencing Guidelines. *Booker,* —— U.S. at ——, 125 S.Ct. at 767. The court cannot adopt the position advanced by the government that a criminal sentence should fall within the Guidelines range, absent highly unusual circumstances. Such wholesale application of the Guidelines as *per se* reasonable effectively converts the now-advisory guidelines to mandatory guidelines triggering unconstitutionality in the same way the Washington guidelines did in *Blakely. See Blakely,* —— U.S. at ——, 124 S.Ct. at 2538; *Booker,* —— U.S. at ——, 125 S.Ct. at 749. Similarly, the court will not preserve a "de facto" mandatory Guidelines scheme by affording the Guidelines a presumption of reasonableness in every case. Such an interpretation of the *Booker* remedy would circumvent *Booker's* substantive holding, and would defy the directive that the court consider the factors in 18 U.S.C. § 3553(a).

In "consulting" and "taking into account" the Guidelines, the court considers that the Guidelines were developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11–12 (Nov.2004) (hereinafter, "Fifteen–Year Assessment"). The Sentencing Commission ("Commission") was originally charged by Congress with developing guidelines to meet the "purposes of punishment" set out in § 3553(a)(2), and to achieve proportionality, crime control through incapacitation and deterrence, and rehabilitation. *Id.* at 12–13. Toward that end, the Commission developed and used data on past practices and recidivism in formulating the Guidelines. *See id.* at 14. Accordingly, the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices. *Id.* at 14. Based on those statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. *Id.* Accordingly, in many cases, the Guidelines represent a reasonable estimation of a fair sentencing range.

However, for policy reasons and because statutory mandatory minima dictated many terms of the drug-trafficking guidelines, the Commission departed from past practices in setting offense levels for such crimes as fraud and drug trafficking. *Id.* at 15. Consequently, and based also on its own experience and familiarity with state court sentencing, the court finds Guideline ranges of imprisonment for those crimes are less reliable appraisals of fair sentences.[6] Also, the fairness of the Guide-

---

**6.** The Guidelines' quantity-driven, "market-oriented" approach also contributes to disparity and unreliability in drug sentencing. *See Neal v. United States,* 516 U.S. 284, 296, 116 S.Ct. 763, 133 L.Ed.2d 709 (noting incongruity between mandatory minimum sentences and Guidelines). The quantity system was developed to punish bigger distributors more harshly, but practices of charging conspiracies over a long period of time has the result of aggregating many small distributions so as to make a long-term small quantity distributor look like a large-quantity distributor. For example, a distributor responsible for selling one gram at a time a hundred times gets the same sentence as the dealer caught selling 100 grams only once.

lines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. *Id.* at 23–24. To that end, prosecutors have been directed to "charge and pursue the most serious, readily provable offense or offenses that are supported by the facts of the case, except in limited, enumerated circumstances." *Id.* at 24. Because sentencing uniformity is crucially dependent on charging uniformity, the Commission built mechanisms into the Guideline scheme— the multiple count rule, cross-references to other Guidelines sections and the relevant conduct rule—to ameliorate the effects of uneven charging. *Id.* at 24–25. These provisions attempt to convert the Guidelines scheme to a "real offense" system, as opposed to a "charge offense" system. *Id.* In this court's experience, the Department of Justice does not always "charge and pursue the most readily provable" (beyond a reasonable doubt) crime, especially in drug prosecutions, with the result of introducing more disparity in the system.[7] *See Booker,* —— U.S. at —— & n. 11, 125 S.Ct. at 782 & n. 11 (Stevens, J., dissenting in part) (gathering authorities in footnote and noting in text that "a prosecutor who need only prove an enhancing fact by a preponderance of evidence has more bargaining power than if required to prove the same fact beyond a reasonable doubt").

Despite its salutary goals, empirical evidence shows that presentencing practices such as charging and plea bargaining continue to introduce significant disparities into the sentencing regime. Fifteen–Year Assessment, Executive Summary at xii.

Government motions for departures for substantial assistance have also contributed significantly to disparity and unfairness under the Guidelines. *Id.* at xiii. Moreover, it is clear that there are regional disparities in the regime. *Id.* at xii; *see also Booker,* 125 S.Ct. at 782 n. 11 (Stevens, J., dissenting in part). Accordingly, with the knowledge that the Guidelines do not necessarily represent a reliable indication of reasonableness in every case, the court will take the Guidelines into account, making an individual assessment of the reasonableness of the proposed Guidelines range in conjunction with the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a).

■■■ In order to comply with due process in determining a reasonable sentence, this court will require that a defendant is afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government seeks to rely to increase a defendant's sentence.[8] The court notes that nothing prevents a defendant from waiving his right to a jury trial and consenting to factfinding by the court. *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2541 (noting that "when a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding"); *Duncan v. Louisiana,* 391 U.S. 145, 158, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). When a defendant pleads guilty, he or she,

---

7. The court does not necessarily criticize this practice, which may at times be based on an assessment that the resulting sentences would be unreasonably harsh or draconian. *See* Fifteen–Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").

8. This approach is similar to that undertaken by the court after the *Blakely* opinion was issued. *See United States v. Terrell,* No. 04–CR–24, 2004 WL 1661018 (D.Neb. July 22, 2004). This approach may not be mandated by *Booker,* but it is not inconsistent with, nor prohibited by, *Booker.*

of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A waiver of the right to a trial by a jury, however, does not equate to a waiver of the right to have the government prove its case beyond a reasonable doubt. *See id.* (stating that pleading guilty implicates the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to confront one's accusers, and the Sixth Amendment right to trial by jury with no mention of the burden of proof).

■ There is no authority to support the contention that a defendant can consent to a change in the burden of proof for a criminal prosecution. This is so because the burden of proof is not the defendant's to waive. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (noting the importance "in a free society that every individual going about his ordinary affairs have confidence that the Government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty"); *see also Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) ("The Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires."); *Sullivan v. Louisiana*, 508 U.S. 275, 278, 282–83, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (stating that "the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt" and noting that an instructional error incorrectly describing the burden of proof will vitiate the jury's findings: "[d]enial of the right to a jury verdict of guilt beyond a reasonable doubt" is structural error not subject to harmless error review); *Estelle v. McGuire*, 502

U.S. 62, 72 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense"); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (finding the *Winship* doctrine, "establishing so fundamental a substantive constitutional standard, must also require that the factfinder will rationally apply that standard to the facts in evidence"); *Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (recognizing a limit on state authority to reallocate traditional burdens of proof).

The court is cognizant that the limits of due process are defined with reference to the line that separates an element of a crime from a sentencing factor. *See, e.g., Blakely*, 124 S.Ct. at 2537 n. 5; *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348; *Harris v. United States*, 536 U.S. 545, 552–53, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); *Jones v. United States*, 526 U.S. 227, 233, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). That line remains blurred after *Booker*. *See Booker*, —— U.S. at ——, 125 S.Ct. at 755 (substantive majority opinion) (addressing sentencing factor/element distinction and identifying constitutional safeguards as formality of notice, identity of factfinder and the burden of proof). In view of the uncertainty surrounding this issue, the court will err on the side of caution in protecting a criminal defendant's constitutional rights. Just as a court should construe a statute to avoid a constitutional infirmity if possible, *see Clark v. Suarez–Martinez*, —— U.S. ——, ——, 125 S.Ct. 716, 724, 160 L.Ed.2d 734 (2005), prudence dictates that the court should adopt sentencing procedures that lessen the potential that a sentence will later be found unconstitutional. Requiring that Fifth and Sixth Amendment procedural safeguards be afforded to enhancing facts will achieve

this goal—the court will apply the same standard of proof to the factual showing that would be applied in reviewing the sufficiency of evidence to support the finding, or in conducting harmless error review on appeal, e.g., whether a reasonable juror could have found the fact beyond a reasonable doubt.[9] *See Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[10]

Whatever the constitutional limitations on the advisory sentencing scheme, the court finds that it can never be "reasonable" to base any significant increase in a defendant's sentence on facts that have not been proved beyond a reasonable doubt. *See Ring v. Arizona,* 536 U.S. 584, 592–93 and n. 1, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (holding that any fact essential to imposition of the death penalty must be submitted to a jury and found beyond a reasonable doubt); *Apprendi,* 530 U.S. at 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (finding a sentence violates the right to "a jury determination that [the defendant] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"); *Jones v. United States,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215 (1999) (holding that the carjacking statute, if construed as defining a single crime with three maximum penalties instead of three distinct offenses would violate the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment).

In view of the foregoing, this court finds that it will continue to require that facts that enhance a sentence are properly pled in an indictment or information, and either admitted, or submitted to a jury (or to the court if the right to a trial by jury is waived) for determination by proof beyond a reasonable doubt. The court finds that although *Booker*'s Sixth Amendment holding may not require such a procedure, it is not precluded. It is up to this court to determine a reasonable sentence and the court will not rely on facts proved to a mere preponderance of evidence in order to increase a defendant's sentence to any significant degree. To the extent that the government intends to rely on the proof of any fact to enhance a defendant's sentence, that fact must be pled, by indictment or information, and either admitted or proved.

## II. DISCUSSION

Defendant Kelley was indicted on April 22, 2004, and charged with counterfeiting with intent to defraud in violation of

9. Although a misallocation of factfinding responsibility (judge versus jury) does not warrant retroactive application, *Schriro v. Summerlin,* —— U.S. ——, ——, 124 S.Ct. 2519, 2523, 159 L.Ed.2d 442 (2004), the same cannot be said for the retroactivity of application of a preponderance of evidence standard as opposed to a reasonable doubt standard. *See Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339; 53 L.Ed.2d 306 (1977) (giving retroactive effect to rule requiring proof of all elements of crime beyond a reasonable doubt and voiding presumptions that shift the burden of proof to defendant); *Ivan v. City of New York,* 407 U.S. 203, 205, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972) (holding that the purpose of a reasonable doubt standard is "to overcome an aspect of a criminal trial that impairs the truth-finding function, and *Winship* is thus to be given complete retroactive effect"). Application of a lower standard of proof may be an error that significantly affects factfinding accuracy and undermines society's confidence in the result.

10. This procedure will work no disadvantage to the government; the government may provide constitutional due process notice to a defendant in either a superseding indictment or an information prior to either a trial or the entry of a guilty plea.

18 U.S.C. § 471 and 2. Filing No. 1. That statute provides a sentencing range of up to twenty years. 18 U.S.C. § 471. He entered into a plea agreement with the government and pled guilty on August 30, 2004. Filing Nos. 15 and 16. The court deferred acceptance of the plea pending review of a presentence investigation report ("PSR") prepared by the United States Probation Office ("Probation Office").

The PSR was subsequently prepared and furnished to the parties and to the court. The court has reviewed the PSR and generally adopts its findings for the purposes of sentencing, with certain exceptions as detailed below. The Probation Office determined that the base offense level for counterfeiting under the Guidelines was 15, representing a base offense level of 9 plus enhancements for possessing a counterfeit device, pursuant to U.S.S.G. § 2B5.1(b)(3). The probation officer found defendant is entitled to a two-point adjustment for acceptance of responsibility, resulting in a total offense level of 13. Defendant's criminal history category is I. Accordingly, the Probation Office calculated Kelley's Guideline imprisonment range was 12–18 months (Zone D) and his supervised release range was two to three years. He was subject to a fine of $3,000—$30,000, and was liable for restitution to the businesses to which he had passed counterfeit money.

The defendant moved for a continuance and for downward departure during the first sentencing hearing on November 12, 2004 (Filing No. 24). In support of his contentions, the defendant essentially argued that this is not a typical counterfeiting case and pointed to the defendant's military record and pursuit of education prior to becoming addicted to crack cocaine to support the contention that defendant had not sought to profit from the counterfeiting but merely to satisfy his habit. The court granted the continuance and *Booker* was issued shortly before defendant rescheduled the hearing. Under the mandatory Guidelines, the court would have construed defendant's statements as a motion for downward departure as being "outside the heartland" of cases under the Guidelines, presenting circumstances not taken into consideration by the Sentencing Commission in formulating the Guidelines.

If the court were bound by the Guidelines, the court would find that the defendant's motion for downward departure should be granted. Undisputed evidence shows that the defendant counterfeited currency by scanning it and printing it on a color printer in his home. There is no evidence that defendant possessed anything more than ordinary, commonplace computer equipment. Under the Guidelines, the base offense level for a counterfeiting offense is 9. *See* U.S.S.G. § 2B5.1(a). A two-level enhancement is added if the defendant either "manufactured or produced any counterfeit obligation ... or had custody of or control over a counterfeiting device or materials used for counterfeiting" or "controlled or possessed (i) counterfeiting paper similar to a distinctive paper or (ii) a feature or device essentially identical to a distinctive counterfeit deterrent." U.S.S.G. § 2B5.1(b)(2). Correspondingly, the offense level is further enhanced if subsection (b)(2)(A) applies, to level 15. Application of the enhancements would thus increase defendant's offense level from 9 to 15, increasing the minimum sentence of imprisonment, at criminal history category I, from 4 months to 18 months, and most importantly, moving the defendant from Zone B to Zone D, thus limiting the possibility of partial satisfaction of the sentence by home detention or community confinement. *See* U.S.S.G. §§ 5C1.1, 5F1.1 and 5F1.2.

The Guidelines indicate that the reason for treating possession of counterfeiting devices and production of counterfeited items as an aggravated form of counterfeiting is "because of the sophistication and planning involved in manufacturing counterfeit obligations." U.S.S.G. § 2B5.1, comment. (backg'd.). These Guidelines were, of course, drafted before the advent of the computer equipment widely available today. There has been no showing that the defendant's counterfeiting operation, if it can be called that, was in any way sophisticated or involved anything but minimal planning. In fact, the court finds the defendant's actions show a startling lack of sophistication. Significantly, although the defendant admitted to producing $1,600 worth of counterfeit bills, he caused less than $300 in actual losses. Accordingly, the court would find a downward departure warranted in this case. The court would determine that the defendant's base offense level was 9 under U.S.S.G. § 2B5.1(a), with a two-point adjustment for acceptance of responsibility resulting in a total offense level zero to six months in Zone A. Alternatively, the court would construe defendant's statements at the hearing as objections to the facts underlying the enhancements and would find that the government had not met its burden to prove the facts on which the enhancements were based beyond a reasonable doubt.

The court has thus determined defendant's reasonable sentence, under *Booker's* remedial scheme, mindful that it must fulfill "its duty to impose a sentence sufficient, but not greater than necessary, to comply with sentencing purposes," and must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." *Booker,* —— U.S. at ——–——, 125 S.Ct. at 766–67; 18 U.S.C. § 3553(a)(1). The court has further considered the need for the sentence imposed: (A) to reflect the serious-

ness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. See 18 U.S.C. § 3553(a)(2). In addition, the court has considered, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines, and any policy statements promulgated thereto. 18 U.S.C. § 3553(a)(2). Also, the court has considered the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(6) & (7).

In consideration of the foregoing, the court finds that the defendant should be sentenced to time served and to six consecutive months of home confinement and three years of supervised release, subject to the special terms and conditions set forth in the judgment including sentence filed by the court. These terms and conditions will include completion of a rigorous program for inpatient drug treatment at defendant's own expense. An important consideration in this case is "the need for the sentence imposed—... (D) to provide the defendant with needed ... medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The sentence imposed better serves to accomplish this goal than the Guidelines sentence of additional imprisonment.

Defendant has been incarcerated since early September. The government conceded that drug dependency treatment is

important in this case. The court is aware that drug treatment would most likely not be available to defendant through the Bureau of Prisons unless he were incarcerated for over two years. Drug treatment will promote the need "to protect the public from further crimes of the defendant." *Id.,* § 3553(a)(2)(C). The marginal protection to the public afforded by incarcerating the defendant for a few more months is more than offset by the potential increased risk of recidivism if defendant is denied treatment.

In addition, under section 3553(a)(1) the court has considered "the nature and circumstances of the offense and the history and characteristics of the defendant." Defendant is thirty-five years old with a relatively clear record. He has honorably served his country in the military. He has pursued his education and is only a few classes short of obtaining his college degree. The court finds that the defendant's criminal acts were generally out of character and were due to his addiction to methamphetamine. Defendant has shown a desire to cooperate with and succeed in a rigorous and demanding treatment program. Addressing the other section 3553(a) factors, this sentence will adequately reflect the offense seriousness, promote respect for the law, provide just punishment and afford adequate deterrence. 18 U.S.C. § 3553(a)(1)(A), (B). A fine will not be assessed due to the cost of defendant's treatment, which will be borne by defendant, but restitution will be ordered. To the extent that this court is able to discern any sentencing disparity, the court finds that the sentence imposed herein will not materially impair the achievement of the sentencing goal of imposing similar punishments upon similarly situated defendants.

A judgment and order of commitment, together with a statement of reasons, in conformity with this Memorandum Opinion will issue this date.