Filed 1/11/16  P. v. Jones CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065740 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD250578) |
| JESSIE WILLARD JONES, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 21, 2015, be modified as follows:

1.  On page 2, footnote 2 is deleted and the following sentence is added to the end of the only paragraph on page 2:

"The court struck the four one-year enhancements for Jones's prior prison terms pursuant to section 1385."

2.  On page 21, the words "either impose or strike the four one-year enhancements for Jones's prior prison terms" are deleted from the first sentence of the disposition.  The disposition now reads as follows:

"The sentence is vacated and the matter remanded for the superior court to stay Jessie Willard Jones's sentence on count 3, apply only one Penal Code section 667, subdivision (a)(1) enhancement, and otherwise resentence Jones. The judgment is otherwise affirmed. The court is directed to prepare an amended abstract of judgment reflecting the resentencing and forward a certified copy to the Department of Corrections and Rehabilitation."

**There is no change in the judgment**.

McCONNELL, P. J.

Copies to: All parties

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065740 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD250578) |
| JESSIE WILLARD JONES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lorna A. Alksne, Judge.  Affirmed in part, vacated in part and remanded with directions.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Anthony DaSilva, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jessie Willard Jones of first degree robbery (Pen. Code,[1] § 211; count 1), residential burglary (§§ 459, 460; count 2), assault with a deadly weapon (§ 245, subd. (a)(1); count 3), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 4), assault with a firearm (§ 245, subd. (a)(2); count 5), and false imprisonment (§§ 236, 237, subd. (a); count 7).  The jury found true a special allegation that Jones personally used a deadly and dangerous weapon—a firearm—to commit the robbery, residential burglary, assault with a firearm, and false imprisonment. (§ 12022.5, subd. (a).)  In a bifurcated bench trial, the court found true allegations that Jones served four prior prison terms (§§ 667.5, subd. (b), 668), that Jones was convicted of a serious felony (§§ 667, subd. (a)(1), 1192.7, subd. (c)), and he was convicted of a serious or violent felony within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12).  It sentenced Jones to a 28-year prison term consisting of 12 years (double the six-year term) for the count 1 robbery, a consecutive two-year term (double the one-third midterm) for the count 3 assault, a consecutive four-year term for the firearm use finding, and two consecutive five-year terms on counts 1 and 3 for the serious felony finding.  The court stayed under section 654 the sentences on counts 2, 4, 5 and 7 and the enhancements on the true findings for the accompanying special allegations.[2]

---

[1]    Statutory references are to the Penal Code.

[2]    Jones's counsel requested that the trial court stay the four one-year enhancements for the true findings on Jones's four prior prison term allegations.  The trial court stated: "All right.  The court is going to stay the four prison priors and not impose the additional four years."  The trial court was required to either impose the one-year prior prison term enhancements under section 667.5, subdivision (b), or strike them.  (See *People v. Jordan*

Jones contends: (1) the trial court erred by failing to stay his sentence on count 3 under section 654; (2) the court incorrectly instructed the jury on the definition of reasonable doubt, resulting in a violation of his due process rights; and (3) there is insufficient evidence that he used a firearm, requiring reversal of his count 5 conviction and firearm enhancement. The People concede the court should have stayed Jones's sentence on count 3. They also point out that one of the five-year prior serious felony enhancements must be stricken, and that the matter should be remanded for resentencing, to which Jones agrees.

We agree Jones's sentence on count 3 should have been stayed under section 654, and also that the trial court must add only one five-year serious felony enhancement under section 667, subdivision (a)(1) to Jones's determinate terms. We vacate Jones's sentence and remand the matter for resentencing. In all other respects we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

On the afternoon of September 3, 2013, 63-year-old Charles Williams was at home with his security door locked when Jones, who Williams knew from the neighborhood as "Peanut," came to his door. Jones asked Williams about drugs and money, which Williams denied having. Jones got upset and left. After Williams sat back

---

(1986) 42 Cal.3d 308, 314; *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 433; *People v. Perez* (2011) 195 Cal.App.4th 801, 805-806.) Though the four one-year enhancements are not reflected on the abstract of judgment, suggesting they were stricken, because we are remanding the matter for resentencing, the court may make a proper sentencing choice on those enhancements.

down to watch television, he saw another man he knew, Gilbert Truillo,[3] at his door using a hammer to pry the door open. Truillo was with another man who Williams did not know; both had bandanas partially covering their faces.

Truillo and the other man got the door open, and the unidentified man struck Williams in the head with the hammer. Truillo grabbed Williams by the neck. Both men tried to force Williams to the ground. While this happened, Jones came to Williams's door and told Williams to get down. Jones kicked Williams in the groin and then pulled a pistol on Williams, telling him to get on the floor or be shot. Williams, who had shot and handled guns before, described the gun as a black, nine-millimeter type pistol. It appeared to Williams to be a real gun, and it slowed him from resisting.

While Williams was on the floor, Jones told the men to check his pockets; the unidentified man took money out of Williams's pocket and Truillo took Williams's wallet. Truillo then searched Williams's nightstand and demanded Williams's bank card number. During this time, Jones was sitting and holding the gun. The men left with Williams's cash, cell phone and other belongings.

Eventually Williams left his home to call 911; he walked down the street to different friends' houses while Jones followed him on a bicycle. As he did so, he passed his neighbor's house where Truillo, Williams's neighbor Derrick Campbell and others were looking through Williams's wallet and passing out the contents. Williams

---

3    The amended information names Jones's codefendant as Gilbert Truillo, Jr. "aka Gilbert Trujillo." The reporter's transcript refers to Jones's codefendant as Trujillo. This court addressed Truillo's appeal in a nonpublished opinion. (*People v. Truillo* (Mar. 12, 2015, D065438).)

eventually arrived at the home of Davina Mangan and called police, while Mangan confronted Jones and cursed at him. After Jones said he had been trying to help Williams, Mangan apologized and told him they had called police, and Jones left. Mangan testified that she did not see a gun, hammer or any blood on Jones. Five to ten minutes after police arrived, officers found Jones and brought him to Williams, who identified Jones as one of the assailants.

Campbell testified that on the day of Williams's assault and robbery, he found Truillo on his porch with another man, who was rummaging through Campbell's bag of construction tools. The men left after Campbell confronted them, but he later discovered a hammer was missing from the bag. Campbell denied going through Williams's wallet.

*Defense Evidence*

Jones did not testify. He presented a district attorney investigator, who testified about several pre-trial conversations he had had with Williams about the crimes.

DISCUSSION

I. *Stay of Count 3 Sentence Under Section 654*

Jones contends the record does not contain substantial evidence that he harbored separate criminal objectives to both commit robbery (count 1) and assault with a deadly weapon (count 3), and consequently the trial court was required to stay his prison term on

the count 3 offense under section 654.[4]  The People concede the point.  They separately

point out that under *People v. Sasser* (2015) 61 Cal.4th 1 (*Sasser*), this court should strike

one of the five-year enhancements on the jury's true finding that Jones suffered a prior

serious felony.  They argue that given the nature of Jones's sentence, the matter should be

remanded for the trial court to resentence him in light of the entire sentencing scheme.

Jones agrees.

Section 654 bars the imposition of multiple sentences for a single act or

omission, even though the act or omission may violate more than one provision of the

Penal Code.  (*People v. Jones* (2012) 54 Cal.4th 350, 358; *People v. Mesa* (2012) 54

Cal.4th 191, 195.)  " ' "Whether a course of criminal conduct is divisible and therefore

gives rise to more than one act within the meaning of section 654 depends on the intent

and objective of the actor.  If all of the offenses were incident to one objective, the

defendant may be punished for any one of such offenses but not for more than one." ' "

(*People v. Capistrano* (2014) 59 Cal.4th 830, 885.)  The question of defendant's intent

and objectives are factual questions; to permit multiple punishment the evidence must

show the defendant formed a separate intent and objective for each offense for which he

was sentenced.  (*Id*. at p. 886.)

Here, we agree with the People's concession that the evidence does not reflect any

separate intent or objective in the hammer assault on Williams other than to facilitate the

---

4     Section 654 provides in part:  "An act or omission that is punishable in different
ways by different provisions of law shall be punished under the provision that provides
for the longest potential term of imprisonment, but in no case shall the act or omission be
punished under more than one provision."  (§ 654, subd. (a).)

robbery. As the People point out, the hammer assault "was in the course of, and part of, the means used by [Jones] and his cohorts to perpetrate the robbery" and their "primary objective was to rob Williams . . . ." It has long been recognized that where a defendant is convicted of robbery and other crimes incidental to the robbery such as assault, section 654 precludes punishment for both crimes. (See *People v. Brown* (1989) 212 Cal.App.3d 1409, 1426-1427 [assault with firearm in course of robbery not separately punishable from robbery conviction], disapproved on another ground in *People v. Hayes* (1990) 52 Cal.3d 577, 628, fn. 10; *People v. Miller* (1977) 18 Cal.3d 873, 885 [burglary, robbery, and assault were incidental to primary objective of theft of contents of jewelry store], overruled on another ground in *People v. Oates* (2004) 32 Cal.4th 1048, 1067-1068, fn. 8; compare, *People v. Sandoval* (1994) 30 Cal.App.4th 1288, 1299-1300 [separate punishment for robbery and assault proper where after attempted robbery was complete, defendant shot the victim].) Section 654 thus bars separate punishments on the robbery and assault on Williams. We will modify the judgment to stay the sentence on the count 3 assault conviction, as well as the consecutive five-year term for Jones's serious felony prior conviction.

Additionally, as the People point out, Jones's sentence must be modified to eliminate one of the five-year enhancements for his serious felony prior under *People v. Sasser*, *supra*, 61 Cal.4th 1. *Sasser* was decided while this appeal was pending. In that case, the California Supreme Court held that the five-year prior serious felony enhancement (§ 667, subd. (a)) should be added only *once* to a defendant's aggregate determinate term, even when the determinate term is imposed as part of a second strike

sentence. (*Sasser*, at pp. 6-7, 12-17.) *Sasser* applies to Jones's determinate sentence. We also agree that on remand, the trial court should have an opportunity to reconsider all of its sentencing choices so as to have the ability to fit the punishment to Jones.

## II. *Reasonable Doubt Instructions*

### A. *Background: Pre-and Post-Trial Jury Instructions, Counsel's Closing Arguments*

The People tried Jones jointly with Truillo. Before trial, the court preinstructed the jury as to reasonable doubt with CALCRIM No. 103, telling it that a defendant in a criminal case is presumed to be innocent; the presumption required the People to prove each element of a crime and special allegations beyond a reasonable doubt; and "[p]roof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt."

During a discussion concerning jury instructions, defense counsel for Truillo (joined by Jones's counsel) asked the court to give one of two alternative reasonable doubt instructions, one of which referred to an "abiding conviction to an evidentiary certainty" and the other a federal pattern instruction. The court denied the requests and ruled it would give CALCRIM No. 220.

Following the close of evidence, the court instructed the jury with CALCRIM No. 220 as to reasonable doubt as follows: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you that the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise. [¶]

8

Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is [true]. The evidence need not eliminate all possible doubt, because everything in life is open to possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

During closing arguments, Truillo's counsel discussed the reasonable doubt standard, telling the jury in part: "In order to convict Gilbert Truillo, you have to believe Charles Williams beyond a reasonable doubt. And I suggest to you that you just can't. You can't say that he is believable beyond a reasonable doubt such that you have an abiding conviction that what he tells you is truthful. His testimony has to leave you with an abiding conviction, a lasting conviction, to an evidentiary certainty of what he says is so."

In rebuttal, the prosecutor told the jury that defense counsel's comments on the burden of proof was not the standard: "[Y]ou heard specific statements that are just simply untrue about the burden of proof. And I want to be absolutely clear . . . what the burden of proof is in this case. It is beyond a reasonable doubt. [¶] It is not you are sure or an abiding conviction to a certainty."

Defense counsel objected in the following colloquy:

"[Truillo's counsel:] Objection, your honor, that is the state of the law.

"[The prosecutor:] Not to a certainty.

9

"The Court:  Not to a certainty.  I didn't include that instruction.

"[Truillo's counsel:]  It is the state of the law, but—

"The Court:  It is not in their instructions.  You are to follow the instructions as written.

"[The prosecutor:]  Or to an evidentiary certainty.  Or if there is any question in your mind.  You heard that statement.  That's not the law."

The prosecutor continued in part:  "You can have 100 unreasonable doubts and still convict.  Be clear on this.  This isn't proof beyond all possible doubt, all imaginary doubt, beyond a shadow of a doubt.  It is proof beyond a reasonable doubt.  . . .  [¶]  And the jury instructions spell this out clearly.  Just please read the instructions and please follow those instructions."

B.  *Contentions*

Jones's argument heading on this point states the trial court erred by incorrectly instructing the jury on the definition of reasonable doubt.  However, in the body of his arguments, Jones maintains the prosecutor misadvised the jury that the definition did not encompass evidentiary certainty or an abiding conviction, and when the court failed to cure the prosecutor's statement but said, "Not to a certainty.  I didn't include that instruction," the court "ratif[ied]" a "patently incorrect and lower standard of proof than the Constitution requires . . . ."  Jones argues that evidentiary certainty is a "bedrock definition" of beyond a reasonable doubt, as is the phrase "abiding conviction," and that the court's giving of the pattern instruction did not cure the error, akin to the error that occurred in *People v. Centeno* (2014) 60 Cal.4th 659.  According to Jones, the error

10

violated his due process rights and produced an unconstitutional verdict that is reversible per se under *Sullivan v. Louisiana* (1993) 508 U.S. 275.

In response, the People argue the prosecutor did not misstate or alter the reasonable doubt instruction, but rather engaged in proper rebuttal to defense counsel's remarks urging the jury to have an abiding conviction to a certainty or to an evidentiary certainty. They point out the prosecutor told the jury to follow the court's instructions, and engaged in no misconduct by attempting to focus the jury on the proper standard of proof. The People maintain that even if the prosecutor made some misstatement, it was harmless beyond a reasonable doubt because CALCRIM Nos. 103 and 220, which correctly state the burden of proof, were given to the jury, which was also told that any conflict between the attorney's comments and the court's instructions should be resolved by following the court's instructions. Thus, according to the People, we must presume the jury followed those proper instructions, and the court's further admonition to follow the jury instructions clarified any possible confusion and ensured the jury considered the correct standard.

In reply, Jones asserts that the People have recast his argument as an attack on the pattern jury instruction, and asks us to disregard the People's arguments on that point. He claims he does not contend the instruction must include the phrase "evidentiary certainty," but rather when the judge tells the jury they can convict without finding the evidence meets this standard, the instruction is constitutionally deficient, since, according to Jones, the jury needs to reach a " ' "subjective state of near certitude of the guilt of the accused." ' " Jones emphasizes that the issue is whether the jury was incorrectly told they

11

did not need to have such degree of certitude of his guilt. He asserts the People "cannot show the jury was not misled by the trial court's erroneous ruling modifying the reasonable doubt instruction and instructing the jury they need not have 'certainty' as to [his] guilt . . . ."

C. *Analysis*

"California law imposes a duty on the trial court to instruct the jury in a criminal case on the presumption of innocence in favor of the defendant and the prosecution's burden of proving the defendant's guilt beyond reasonable doubt." (*People v. Aranda* (2012) 55 Cal.4th 342, 352-354; see § 1096.[5]) The trial court's statutory obligation to instruct the jury on these principles is satisfied by instructing the jury with CALCRIM No. 220. (*Aranda*, at p. 353.) Although the standard instruction is preferred, it is not mandatory. (*Id*. at p. 354.) "The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. [Citation.] Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, [citation], the Constitution does not require that any particular form of

_____

[5]    Section 1096 provides: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his or her guilt is satisfactorily shown, he or she is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him or her guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.' "

12

words be used in advising the jury of the government's burden of proof. [Citation.] Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.' " (*Victor v. Nebraska* (1994) 511 U.S. 1, 5.)

The essence of Jones's challenge is that the trial court's remark, "Not to a certainty," somehow modified the pattern instructions given and became a definitive and binding instruction on the law, thereby lessening the prosecutor's burden of proof. But the court's remarks, just like the arguments of counsel, "must be judged in the context in which they are made." (*Boyde v. California* (1990) 494 U.S. 370, 385; see *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1224, fn. 21, superseded by statute on another ground as stated in *In re Steele* (2004) 32 Cal.4th 682, 691.) As for the prosecutor's statements, they were plainly directed at the "certainty" language, not the notion of "abiding conviction." In any event, with respect to the prosecutor's remarks, we apply the principle that " '[w]hen [closing] argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." ' " (*People v. Centeno*, *supra*, 60 Cal.4th at p. 676.)

We do not accept the premise that the court's remarks, "Not to a certainty" and "I didn't include that instruction," either told the jury "that 'certainty' is not necessary for a

13

finding of guilt" or constituted an explanation of the prosecution's burden of proof.[6] The court had already instructed the jury fully on the reasonable doubt standard. We do not read the court's brief statement as an attempt to clarify, paraphrase or explain the proper standard to the jury. In context, the court was remarking that the jury instruction it gave did not include that term ("It is not in their instructions"), and, like the prosecutor, it immediately admonished the jury to "follow the [jury] instructions as written." As we have pointed out above, Jones does not challenge the adequacy or constitutionality of the CALCRIM pattern instructions on reasonable doubt. Nor does Jones dispute that those proper instructions were read to the jury, or the fact both the prosecutor and the court referred the jury to those instructions and directed it to follow them. As the People point out, the jury was further instructed that if counsel's arguments were contrary to the jury instructions, the instructions prevailed. We presume they followed the instructions notwithstanding the prosecutor's arguments or the court's remarks. (*People v. Osband* (1996) 13 Cal.4th 622, 717 [reviewing court presumes " 'that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade' "].)

---

6    Moreover, the court was not required to include any reference to certainty in connection with the reasonable doubt instructions. The "trial court is not required to instruct the jury in the language of section 1096 or even reference a subjective state of certitude." (*People v. Zepeda* (2008) 167 Cal.App.4th 25, 30, citing in part *People v. Freeman* (1994) 8 Cal.4th 450, 503.) "[N]othing requires a trial court instructing on reasonable doubt to define any amount of subjective certitude required to make a finding of guilt." (*Zepeda*, at p. 30.)

We acknowledge that a court will err when it explains or expands on the concept of reasonable doubt in a manner that lowers the prosecution's burden of proof. (*People v. Centeno*, *supra*, 60 Cal.4th at p. 667; *People v. Aranda*, *supra*, 55 Cal.4th at p. 365; *People v. Johnson* (2004) 119 Cal.App.4th 976, 985.) Reversal is required when any modification to a reasonable doubt instruction results in a reasonable likelihood that a juror understood the modified language to lessen the prosecution's burden of proof. (*Victor v. Nebraska*, *supra*, 511 U.S. at p. 6; *People v. Romero* (2015) 62 Cal.4th 1, 44; *People v. Williams* (2013) 56 Cal.4th 630, 688.) Jones compares his case to *Centeno*. But the circumstances here are entirely unlike those in *Centeno*, in which the court held a prosecutor's use of a shape or diagram to illustrate proof beyond a reasonable doubt was flawed, unrelated to the facts of the case, and "necessarily dr[e]w on the jurors' own knowledge rather than evidence presented at trial." (*Centeno*, 60 Cal.4th at pp. 669, 672.) Nor did anything that the court or prosecutor say here equate the beyond a reasonable doubt standard with a merely "reasonable" view of the evidence presented without regard to the jury's level of confidence in their conclusion, or tell the jury it could find Jones guilty based on a reasonable account of the evidence. (*Id*. at pp. 672, 673.) On this record, there is no reasonable likelihood the jurors understood the court's brief remark to be the correct definition or an alternative definition of the reasonable doubt standard, reducing the applicable burden of proof. Its " 'comments "were not intended to be, and were not, a substitute for [the previously given] full instructions . . . ." ' " (*People v. Avila* (2009) 46 Cal.4th 680, 715-716 [potentially misleading remark by trial court during voir

15

dire not judicial misconduct because remark was not intended to be and was not a substitute for full instructions at the end of trial].)

III. *Sufficiency of the Evidence of the Count 5 Assault with a Firearm*

Characterizing Williams's testimony as "uncorroborated and highly equivocal," Jones contends there is insufficient evidence he possessed and used a firearm for purposes of the count 5 assault and the firearm enhancements. Specifically, Jones points to Williams's recross-examination testimony that he had earlier told a district attorney investigator that he thought the gun was a nine-millimeter handgun, but that it could have been a pellet gun given the small size of the barrel.[7] Jones also points to the absence of testimony about a gun from other witnesses, including Campbell or Mangan, as well as evidence that law enforcement did not find a firearm when they arrested him or recover a firearm in the area where he was caught. Jones argues that because Williams "volunteered" the information before trial, the circumstances are different from those in *People v. Monjaras* (2008) 164 Cal.App.4th 1432, in which the appellate court held a victim's uncertainty about whether an object was a gun did not create reasonable doubt, as a matter of law, that the gun was a firearm.

---

[7]    On recross-examination, Williams was asked: "And you said to the D.A. and his investigator that you believed it was a pellet gun, correct?" He responded, "I didn't say that at first, no. I said I thought it was a [nine-milimeter], but the barrel—the hole was small. It could have been a pellet gun but it was big enough to put a hole in you." Earlier in his testimony, Williams had confirmed that he believed Jones had a gun: "[Prosecutor:] Based on everything that you saw from the gun and all your experience with guns and your knowledge of guns, you believed it was gun that right [*sic*]? [¶] [Williams:] Yes, I did. [¶] [Prosecutor:] As you sit here today, do you believe it was a gun? [¶] [Williams:] Yes. I believe it was a gun."

16

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*People v. Brown* (2014) 59 Cal.4th 86, 105-106.)

The question before us is whether there was substantial evidence to support the court's finding that Jones committed the count 5 assault with a firearm and used a firearm in the commission of the robbery, burglary, assault, and false imprisonment, not whether there is evidence to the contrary or whether Williams's testimony was convincing. Here, Williams's trial testimony that the gun appeared to be a real nine-millimeter handgun constitutes substantial evidence on which the jury could convict Jones on count 5 and the

17

related firearm enhancements. Jones's arguments ask us to relitigate conflicts or inconsistencies in Williams's testimony, and reevaluate its weight and his credibility, based on a prior remark to a district attorney investigator that the gun could have been a pellet gun. But as we have stated, such conflicts and even testimony that is " 'subject to justifiable suspicion' " do not justify the reversal of the judgment. (*People v. Elliott* (2012) 53 Cal.4th 535, 585.) When pressed about this comment, Williams denied telling the investigator that he believed what Jones had was a pellet gun. Williams otherwise consistently testified that Jones held what appeared to be a nine-millimeter handgun, and the evidence additionally shows Williams told a responding police officer that a gun and hammer had been used in the robbery. Williams told another responding officer that Jones had pointed a gun at him and said, "Give me your shit." Jones points to nothing that is inherently improbable about Williams's testimony concerning the gun.

Jones's attempt to distinguish *People v. Monjaras*, *supra*, 164 Cal.App.4th 1432 is unavailing. In that case, the defendant approached the victim and demanded she give him her purse before pulling up his shirt to display the handle of a black pistol tucked in his waistband. (*Id.* at p. 1434.) After the victim turned over her wallet, the defendant's accomplice pressed something against the victim's back and took her purse from her shoulder. (*Ibid.*) A jury convicted the defendant of robbery, and found he personally used a firearm. (*Ibid.*) On appeal, the defendant sought reversal of the firearm use enhancement, arguing the jury was not presented with evidence of a gun to support an inference that the weapon was real and pointing out that the "victim could not say whether the pistol in defendant's waistband was a gun or a toy . . . ." (*Id*. at p. 1435.) The

18

appellate court rejected the argument.  It stated, "Circumstantial evidence alone is sufficient to support a finding that an object used by a robber was a firearm." (*Id*. at p. 1436.)  Though the victim in that case conceded she could not say for certain whether the items was a toy or real, the appellate court reasoned that "[t]he jury was not required to give defendant the benefit of the victim's inability to say conclusively the pistol was a real firearm.  This was so because 'defendant's own words and conduct in the course of an offense may support a rational fact finder's determination that he used a [firearm].' " (*Id*. at pp. 1436-1437.)  Thus, "when . . . a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm . . . .  In other words, the victim's inability to say conclusively that the gun was real and not a toy does not create a reasonable doubt, as a matter of law, that the gun was a firearm." (*Id*. at p. 1437-1438.)[8]

Unlike in *Monjaras*, Williams did not equivocate on his identification of the weapon used by Jones, but rather affirmatively identified it as a real handgun.  But like *Monjaras*, the evidence of the robbery and Jones's use of the gun during it permitted a

---

[8]	The court in *Monjaras* also explained:  "Most often, circumstantial evidence alone is used to prove the object was a firearm.  This is so because when faced with what appears to be a gun, displayed with an explicit or implicit threat to use it, few victims have the composure and opportunity to closely examine the object; and in any event, victims often lack the expertise to tell whether it is a real firearm or an imitation.  And since the use of what appears to be a gun is such an effective way to persuade a person to part with personal property without the robber being caught in the act or soon thereafter, the object itself is usually not recovered by investigating officers." (*People v. Monjaras*, *supra*, 164 Cal.App.4th at p. 1436.)

rational fact finder to conclude he used a firearm. And, as in *Monjaras*, this case is one where Jones "was not engaged in a childhood game of cops and robbers; the robbery was real, and the evidence supports a reasonable inference that the pistol he used was a real firearm, not a [pellet gun]." (See *People v. Monjaras*, *supra*, 164 Cal.App.4th at p. 1435.) The jury considered the evidence and instructions, and found Jones guilty of the count 5 crime, and also found true the firearm enhancements beyond a reasonable doubt. As substantial evidence supports its findings, we do not disturb them.

DISPOSITION

The sentence is vacated and the matter remanded for the superior court to stay Jessie Willard Jones's sentence on count 3, apply only one Penal Code section 667, subdivision (a)(1) enhancement, either impose or strike the four one-year enhancements for Jones's prior prison terms, and otherwise resentence Jones. The judgment is otherwise affirmed. The court is directed to prepare an amended abstract of judgment reflecting the resentencing and forward a certified copy to the Department of Corrections and Rehabilitation.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

21