Filed 11/15/22 P. v. Agaton CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SALVADOR DIRCEO AGATON,<br><br>    Defendant and Appellant. | G060623<br><br>(Super. Ct. No. 16WF2052)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge. Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

Salvador Dirceo Agaton appeals from a lengthy life sentence imposed after a jury convicted him of numerous sex crimes against minors. Appellant contends his convictions must be reversed because the prosecutor committed prejudicial error when she misstated the reasonable doubt standard. As discussed below, we conclude appellant forfeited his claim of prosecutorial error because he did not timely object. Additionally, we reject his related ineffective assistance of counsel claim because he fails to show trial counsel was ineffective. Appellant further contends the trial court erred in instructing the jury it could consider evidence of the charged sex crimes to infer he had a propensity to commit and did commit other charged sex crimes. This argument has been rejected by our Supreme Court, and we are bound to follow that precedent. Accordingly, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

Appellant lived in the apartment complex where the five minor victims -- three sisters (E.V., V.V. and D.V.) and their two friends (E.F. and M.R.) –lived. E.F. and M.R. testified he often grabbed them by their waist or butt, twirled them and throw them up in the air. On one occasion, when the five minors were playing outside, appellant saw them from the nearby laundry room and exposed his penis to them while laughing.

On another occasion, appellant molested three victims while they were playing together. V.V. testified that when she had to stay inside her apartment, she would play near an open window and interact with her friends who were outside. One time, V.V., D.V. and E.F were playing inside while appellant was outside by the window when appellant told E.F. and V.V. to come closer. During this incident, appellant grabbed E.F. and pulled down E.F.'s pants and underwear and touched her vaginal area. He told V.V. to come closer and rubbed V.V.'s vaginal area over her underwear with his hand, before pulling her underwear down and rubbed her vaginal area "skin to skin." He also touched D.V. in a similar manner.

2

V.V. testified appellant molested her two other times.  The first incident occurred while they were sitting on a bench in the apartment complex's hallway.  Appellant reached his hand into her pants and rubbed her vaginal area underneath her underwear.  After pulling his hand out, appellant placed her hand inside his pants and moved her hand up and down his penis.  The second incident occurred in one of the complex's garages.  Appellant unbuttoned her pants, reached underneath her underwear, and rubbed her vaginal area.

E.F. also testified appellant touched her vagina while they were in the garage.  In October 2014, E.F. disclosed appellant's molestation to a school health assistant and the school's principal.  E.F. told the principal that appellant had "put his fingers inside of her vagina on three separate occasions."

At trial, the defense called the mother of the three sisters and E.F.'s mother as witnesses.  They testified they saw appellant playing with the minors, but never saw anything inappropriate.

Appellant testified on his own behalf.  He moved into the apartment complex in 2014 and lived there for four months.  After work, he would hang out in one of the garages with other adults, and he played soccer with several boys, including brothers of E.F. and M.R.  Appellant denied exposing himself or molesting the minors.  He denied playing with the minor victims or even speaking with them.

A jury convicted appellant of one count of sexual penetration of a minor 10 years old or younger (Pen Code, § 288.7, subd. (b); count 1); four counts of lewd conduct upon a minor under age 14 (Pen. Code, § 288, subd. (a); counts 2, 3, 4 & 6); and one misdemeanor count of annoying or molesting a child under age 18 (Pen. Code, § 647.6, subd. (a)(1); count 5).  As to the lewd conduct counts, the jury found true that appellant committed lewd acts against more than one victim (Pen. Code, § 667.61, subds. (b) & (e)(4)) and that each victim was under age 14 (Pen. Code, § 667.61, subds. (j)(2) &

(e)(4)). The trial court sentenced appellant to 115 years to life for the felonies, plus an additional one-year sentence on the misdemeanor, count 5.


II

DISCUSSION

A. *Appellant Has Not Shown Any Prosecutorial Error*

Appellant contends his convictions must be reversed because of prosecutorial misconduct or error. (See *People v. Potts* (2019) 6 Cal.5th 1012, 1036 [noting it is more apt to describe "prosecutorial misconduct" as "prosecutorial error"].) Specifically, he argues the prosecutor misstated the reasonable doubt standard in her rebuttal. (See *People v. Fayed* (2020) 9 Cal.5th 147, 204 ["It is prosecutorial misconduct to misstate the law"].) In rebuttal, the prosecutor stated:

"Let's talk about proof beyond a reasonable doubt. It does, as the law say[s], mean abiding conviction in the truth of the charge. And it's my burden to prove each element, like I said, of each offense beyond a reasonable doubt.

"But guess what, ladies and gentlemen? It is the same standard of proof in every criminal case in this country. From petty theft to murder. It is not reduced to percentages. You can't put it on a chart with all different synonyms and make it appear to be this unattainable burden. That's not what it is.

"*What it means, ladies and gentlemen, is if you sat in this same case with the same evidence before the same judge and the same attorneys and you heard the same evidence, would you make the same decision again?* It's not about life-changing decisions. It's not about telling you, it's not going to be easy back there." (Italics added.)

Appellant acknowledges his trial counsel did not object to the prosecutor's alleged misstatement. Accordingly, he has forfeited his prosecutorial error claim. (See *People v. Fayed*, *supra*, 9 Cal.5th at p. 204 ["To preserve a claim of prosecutorial

4

misconduct on appeal, "'a criminal defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety. [Citations.]" [Citation.] The failure to timely object and request an admonition will be excused if doing either would have been futile, or if an admonition would not have cured the harm'".) Nevertheless, "'[a] defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 674 (*Centeno*).) Thus, we address the substance of appellant's claim of prosecutorial error.[1]

To successfully demonstrate ineffective assistance of counsel, appellant "bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*Centeno*, *supra*, 60 Cal.4th at p. 674.) Because his ineffective assistance of counsel claim is predicated on the failure to object to the prosecutorial error, we first address whether the prosecutor committed error. (*People v. Turner* (2004) 34 Cal.4th 406, 431.)

Here, appellant argues the prosecutor's statement, italicized above, that "the reasonable doubt standard is satisfied if a juror would make the same decision if s/he heard the case again" is "incorrect" and "grossly misstates and trivializes the reasonable doubt standard and the definition of an abiding conviction." To find prosecutorial error, we must view the challenged statement in the context of the entire argument and the jury instructions to determine whether there was a reasonable likelihood the jury understood or applied the comments in an improper or erroneous manner. (*People v. Cortez* (2016) 63 Cal.4th 101, 130-131.) "If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be

[1] Accordingly, we need not address appellant's other arguments for why we should address his prosecutorial claim despite forfeiture.

5

deemed objectionable.'" (*Id.* at p. 130.) "'[W]e "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 894.)

Appellant concludes there was prosecutorial error for three reasons. First, he claims the prosecutor's statement "teaches a juror to vote guilty if s/he feels the defendant is probably guilty and thinks that, if s/he sat through a retrial, s/he would again feel that the defendant is probably guilty." The prosecutor, however, never used the term "probably guilty" or "retrial," and we decline to infer that the jury understood the statement to mean a conviction could be reached based on probable guilt.

Second, appellant argues that "an abiding conviction" does not mean "a juror would reach the same verdict if the case was retried the next day," but that the "juror's faith in the verdict is 'lasting and permanent.'" (*People v. Brigham* (1979) 25 Cal.3d 283, 290 ["abiding" connotes the "lasting, permanent nature of the conviction"].) As the outset, we note that "[t]he beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. [Citation.] Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, [citation], the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. [Citation.] Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.' [Citation.]" (*Victor v. Nebraska* (1994) 511 U.S. 1, 5.) While appellant correctly notes that an "abiding conviction" is not predicated on a juror reaching the same verdict in a retrial, reaching the same verdict again on the same facts suggests the juror has a lasting, permanent and deeply felt belief in the truth of the charges. Stated differently, there is no reasonable likelihood that the prosecutor's statement led the jury to think that "an abiding conviction" of the truth of the

6

charge was something less than a belief that was "settled and fixed" or "lasting and permanent" as those phrases are used in the criminal law.

Finally, appellant notes that no case, federal or state, has ever defined the reasonable doubt in the way the prosecutor did here. But appellant cites no case – and we have located none – that found similar remarks constituted prosecutorial error. We also note that just before making the challenged statement, the prosecutor correctly defined the reasonable doubt standard. Additionally, after rebuttal, the judge correctly instructed the jury on the reasonable doubt standard, and it further instructed the jury that: "You must follow the law as I explained it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." In sum, "'[i]n the context of the whole argument and the [jury] instructions'" (*Centeno*, *supra*, 60 Cal.4th at p. 667), the jury in this case was not reasonably likely to understand the prosecutor's statement as diminishing the prosecution's burden of proof. There was no prosecutorial error. Thus, defense counsel was not ineffective for not objecting to the prosecutor's remarks.

B. *The Trial Court Did Not Err In Instructing the Jury With CALCRIM No. 1191B*

Appellant also contends the trial court erred in giving CALCRIM No. 1191B, which instructs the jury it could consider evidence of charged sexual offenses that were proven beyond a reasonable doubt to infer appellant had a propensity to commit and did commit other charged sexual offenses. As appellant acknowledges, the California Supreme Court has upheld giving this instruction in *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*). Appellant explains he has raised this issue on appeal "to preserve his federal constitutional claim that allowing a jury to use charged offenses to infer that he committed the other offenses charged in the same case violates his due process right to a fundamentally fair trial under the Fourteenth Amendment. Appellant must also raise this issue in the Court of Appeal in order to request the California Supreme Court to reconsider its decision in *Villatoro* in light of the dissent of Justice Corrigan, joined by

7

Justice Werdegar, and the dissent of Justice Liu." Appellant is correct that we are bound to follow California Supreme Court precedent pursuant to *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455. Accordingly, based on *Villatoro*, the trial court did not err by instructing the jurors they may consider proven similarly charged sex offenses as evidence of appellant's propensity to commit other charged offenses. (See *People v. Meneses* (2019) 41 Cal.App.5th 63, 67-68 [rejecting similar claim].)

## III

### DISPOSITION

The judgment is affirmed.



MARKS, J.*

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.